# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

THE CINCINNATI INSURANCE COMPANY

      Plaintiff,

v.                                           No. Civ. 18-981 JCH-SCY

DESERT STATE LIFE MANAGEMENT,
et al.

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendant Cameron Graham's *Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment* (ECF No. 11). The Court, having considered the motion to dismiss, briefs, pleadings, relevant law and otherwise being fully advised, concludes that the motion to dismiss should be denied.

## I.   LEGAL STANDARD ON A MOTION TO DISMISS

On a motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the nonmoving party and allowing all reasonable inferences in favor of the nonmoving party. *Archuleta*, 523 F.3d at 1283. The court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The complaint "does not need

detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If on a motion to dismiss matters outside the pleadings are presented to and considered by the court, the motion generally must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Under Rule 12(d), a court has broad discretion to refuse to accept the extra-pleading materials and resolve the motion solely on the pleading itself. *See Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998). Reversible error may occur if a court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment. *Id*.

No conversion is required, however, when the court considers information that is subject to proper judicial notice or documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."); *Pace v. Swerdlow*, 519 F.3d 1067 (10th Cir. 2008) (explaining that court may properly consider on motion to dismiss documents central to plaintiff's claim and referred to in complaint, where document's authenticity is not in dispute); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (noting that no conversion is required when a court takes judicial notice of its own files and records and facts that are matter of public record). The

documents, however, "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal*, 453 F.3d at 1264 n.24 (quotations omitted).

The following facts are those set forth in the complaint in the light most favorable to Plaintiff, as well as the facts set forth in the exhibits attached to the complaint that are documents referred to in Plaintiff's complaint and central to Plaintiff's claim or are facts subject to judicial notice. The Court will not convert Defendant's motion to dismiss into one for summary judgment.

## II. BACKGROUND

### A. State Court Litigation

Desert State Life Management, Inc., ("Desert State"), is a New Mexico non-profit corporation that provided trustee and representative payee services to its clients. Compl. ¶¶ 4, 10. Paul Donisthorpe was at all relevant times the Chief Executive Officer ("CEO") and Director for Desert State. *Id.* ¶ 6. It appears undisputed that Liane Kerr is Donisthorpe's spouse. *Compare* Def.'s Mot. 4, ECF No. 11, *with* Pl.'s Resp., ECF No. 19 (failing to dispute point).[1] Helen Bennett is a former director of Desert State. Compl. ¶ 44.

On May 31, 2017, the Financial Institutions Division ("FID") filed suit against Desert State and others in a New Mexico state court. *Id.* ¶ 11. The FID alleged that its investigation and analysis of Desert State's banking and client account records led it to believe that from 2006 through the time of its investigation, more than $4 million in trust investment account funds managed by Desert State were transferred out of investment accounts for trusts and out of the accounts of Desert State and into accounts controlled in whole or in part by Donisthorpe. *Id.* ¶ 12. In an August 4, 2017

---

[1] The Court includes this fact, even though it is not set forth in the complaint or accompanying documents because it appears undisputed and gives context to Plaintiff's argument concerning why Kerr is a necessary party. The Court's decision does not rely on the truth of this assertion.

Order, the state court appointed Christopher Moya, FID's Acting Director, as Receiver for the receivership estate of Desert State. *Id.* ¶ 5.

On November 27, 2017, a Criminal Information was filed against Donisthorpe in federal court alleging that from 2006 through 2016 Donisthorpe, the sole owner and operator of Desert State, knowingly and unlawfully schemed to defraud clients by taking and converting approximately $4.8 million of client funds from Desert State client trust accounts to himself for his own use. *Id.* ¶¶ 13-14. The same day, on November 27, 2017, Donisthorpe entered a Plea Agreement and pled guilty to wire fraud and money laundering. *Id.* ¶¶ 15-19. In the plea agreement, Donisthorpe admitted that from 2009 through 2016 he knowingly and intentionally obtained money and property by means of materially false and fraudulent pretenses and representations by transferring client funds from individual client accounts ultimately to accounts for his own use. *See id.*

Numerous lawsuits followed by former Desert State clients. *See id.* ¶¶ 20, 46. Among them, Cameron Graham, as the trustee for Andrew Graham, ("Graham"), *id.* ¶ 7, filed a class action suit (the "Graham Class Action Litigation") on behalf of himself and others similarly situated against Desert State, Donisthope, and Bennett. *Id.* ¶ 20(g). The other lawsuits were consolidated and dismissed without prejudice on July 24-25, 2018, to permit them to pursue their claims through the Graham Class Action Litigation. *Id.* ¶ 20(h).

### B. Insurance and the federal lawsuit

On April 16, 2012, CEO Donisthorpe signed a proposal to obtain a policy of insurance from Plaintiff The Cincinnati Insurance Company ("Plaintiff" or "Cincinnati") for Desert State. *See* Compl. Ex. 3, ECF No. 1-3 at 55-58. Donisthorpe sought renewals of insurance from Cincinnati in April 2013 and April 2016. *See id.* at 49-54. Cincinnati issued a Non-Profit

Organization Blue Chip Policy Number BCN-0007591 for insurance ("the Policy") to Desert State with a policy period from April 17, 2016 to April 17, 2019. Compl. ¶¶ 1, 21, ECF No. 1; Compl. Ex. 3, ECF No. 1-3 at 4 of 58. The continuity date listed in the Policy is April 17, 2012. Compl. Ex. 3, ECF No. 1-3 at 4 of 58.

On March 28, 2017, Helen Bennett notified Cincinnati by email of wrongful acts under the Policy, specifically about allegations that Donisthorpe had been stealing money from client accounts for his own personal use. *See* Compl. ¶ 44. On April 17, 2018, Cincinnati cancelled the Policy. Compl. ¶ 21; Compl. Ex. 4, ECF No. 1-4. Bennett and Desert State sought coverage from Cincinnati for coverage and defense. Compl. ¶ 47. Donisthorpe did not seek coverage for any of the lawsuits and Cincinnati has not defended Donisthorpe. *See id.* ¶¶ 50, 56. On September 5, 2018, Cincinnati notified the FID and Moya that it was denying coverage to Desert State and Donisthorpe for the Graham Class Action Litigation, as well as to for the other lawsuits that had been dismissed. *Id.* ¶ 54. The letter also advised that Cincinnati would defend Desert State for the Graham Class Action Litigation under a reservation of rights to the withdrawal of the defense upon a judicial determination that it has no duty to defend or indemnify Desert State. *Id.* ¶ 55.

On October 22, 2018, Plaintiff filed a declaratory judgment action before this Court under the Court's diversity jurisdiction seeking a determination that the Policy does not cover any loss and defense costs incurred by Desert State and Donisthorpe. *Id.* ¶¶ 2,8. Plaintiff named Desert State, Moya, Donisthorpe, and Graham. Compl. ¶¶ 4-7. At the time Cincinnati filed its declaratory judgment action, only Graham was the named party in the Graham Class Action Litigation. *See* Graham Class Action Compl., ECF No. 19-1. The complaint, however, stated that Graham "will fairly and adequately protect the interests of the Class that he seeks to represent." *Id.* ¶ 57.

Cincinnati asserts that Donisthorpe and Desert State, when answering questions in the application form for the policies, answered negatively to questions in the proposals whether the organization or anyone proposed for insurance was aware of any fact, circumstance, or situation that could result in a claim being filed against the organization or was aware of any act, error, or omission giving a reason to suppose might afford valid grounds for a future claim. *See* Compl. ¶ 25. Cincinnati claims that Donisthorpe and Desert State also did not disclose any fact, circumstance or situation in response to question 4 of the Prior Knowledge/Warranty Declarations and warranted as true that there was no fact, circumstance or situation indicating the probability of a claim or action. *Id.* Based on the admissions in Donisthorpe's plea agreement, Cincinnati contends that he knew at the time he signed the application that he had committed acts of wire fraud and money laundering and had made other materially false and fraudulent representations, so his representations in the applications were false and the proposal contained material nondisclosures. *See id.* ¶¶ 26-27. Cincinnati states that it relied on the material false statements, representations, omissions, and warranties, and that it would not have issued the Policy had the correct information been disclosed. *See id.* ¶¶ 27-31.

Following the filing of the federal complaint, the plaintiffs in the Graham Class Action Litigation filed an amended complaint. *See* Pl.'s Mot., Ex. A, ECF No. 11-1. The Amended Complaint added four new plaintiff/class representatives and added Kerr, among other defendants. *Compare id.* at 1-4, *with* Class Action Compl., ECF No. 19-1 at 1-2. The current claims in the Graham Class Action Litigation as relevant to the parties in this case are for negligence and gross negligence against Desert State, Donisthorpe, and Bennett (Claim 1), breach of fiduciary duty against Desert State, Donisthorpe, and Bennett (Claim 2), conversion against Desert State and Donisthorpe (Claim 3), violations of the New Mexico Uniform Trust Code against Desert State,

Donisthorpe, and Bennett (Claim 4), violations of the New Mexico Unfair Practices Act against Desert State, Donisthorpe, and another, (Claim 5), violations of the New Mexico Uniform Voidable Transactions Act against Desert State, Donisthorpe, Kerr, and others (Claim 6), and unjust enrichment against Kerr (Claim 10). *See* Am. Compl. 22-32, ECF No. 11-1. Cincinnati is not a party to the Graham Class Action Litigation. *See id.* at 2-4. The state court lawsuit does not allege Bennett knew of Donisthorpe's diversion of funds or that she intentionally participated in the diversion, but rather that she exercised little to no oversight of the actions of Donisthorpe or Desert State and failed in her duties as the director of Desert State. *See id.* at 15-17.

Subsequently, Defendant Graham ("Defendant" or "Graham") filed a motion to dismiss the declaratory judgment action (ECF No. 11). Defendant offers multiple reasons for why the Court should dismiss this case. Defendant argues the Court should decline to exercise its discretion to consider this case because it would not settle the issue of Cincinnati's insurance obligations and is better left for the state court. He contends that a judgment would not bind approximately 77 former clients who have not been named in this federal action, nor would it bind Bennett and Kerr. Graham also contends that, should the Court reach the merits, the Court should dismiss the complaint on numerous grounds. First, Defendant asserts Plaintiff has no right to avoid its obligations under the policy because it failed to promptly return the premiums Desert State paid. Defendant additionally contends Cincinnati cannot avoid its coverage duties because of Bennett's and Donisthorpe's wrongs, and accordingly, it must provide coverage for Desert State's vicarious liability for those wrongs. Defendant argues that the various contractual provisions upon which Cincinnati relies do not cancel its obligation to provide Desert State coverage.

C. The Policy terms

According to the Policy, in consideration of the payment of premiums and "in reliance on all statements in the 'proposal' and all other information provided", Cincinnati agreed to "pay on behalf of the 'insureds' all 'loss' which they shall be legally obligated to pay resulting from any 'claim' first made during the 'policy period' … for a 'wrongful act.'" Compl. Ex. 3, ECF No. 1-3 at 6 of 58. Cincinnati also agreed to the duty to defend the insureds against any such claim. *Id.* As relevant here, the Policy defined "insureds" as the "organization;" "Directors, officers and trustees;" and "Employees, volunteers and members". *Id.* at 8 of 58. The Policy further defined "Directors, officers and trustees" to mean "[a]ll persons who were, now are, or shall become a duly elected or appointed director, officer or trustee of the 'organization'…" and the "lawful spouse … of a director, officer or trustee, but only to the extent such person is a party to any 'claim' solely in such person's capacity as a spouse … of a director, officer or trustee … and only if the 'claim' seeks damages recoverable from … property transferred from the director, officer or trustee to the spouse…." *Id.* The named insured is Desert State. *Id.* at 3 of 58.

Cincinnati relies on the following Policy provisions when seeking a declaration that it has no duty to defend or indemnify the lawsuits and demands and that the Policy does not provide coverage for and Cincinnati has no duty to defend or indemnify any of the "claims" emanating from the facts, circumstances, and situations admitted by Donisthorpe in his plea of guilty. *See* Compl. ¶¶ 59-87.

### 1. Warranty Declaration 4 Exclusion (Count I)

Paragraph 4 of the April 16, 2012 proposal states:

No fact, circumstance or situation indicating the probability of a claim or action against which indemnification would be afforded by the proposed insurance is now known by any person(s) or entity(ies) proposed for this insurance other than that which is disclosed in this Proposal. It is agreed by all concerned that if there be knowledge of any such fact, circumstance, or situation, *any claim subsequently*

*emanating therefrom shall be excluded from coverage under the proposed insurance*.

Compl. Ex. 3, ECF No. 1-3 at 58 (emphasis added). In the Declarations section, the Policy says: "These Declarations together with the completed 'proposal', all applicable Coverage Parts, the General Provisions and any accompanying endorsements shall constitute the contract…." *Id.* at 5 of 58.

### 2. Part V. Section VII. (Count II)

Part V of the Policy contains the following section entitled "Proposal":

The "proposal" is the basis of this policy and is incorporated in and constitutes a part of this policy. It is agreed that the statements in the "proposal" are material and this policy is issued in reliance upon the truth of such representations.

In the event that the "proposal" contains any misrepresentation made with the intent to deceive or which materially affects the acceptability of the risk or hazard assumed by us, then *no coverage shall be afforded for any "claim" based upon, arising from or in consequence of any such misrepresentation* with respect to:

    A. Any "directors, officers and trustees", "employees, volunteers and members" or "individual insured" *who knew of such misrepresentation* or the underlying material facts or circumstances which gave rise to the misrepresentation; or

    B. Any "organization" … or "company", if any … chief executive officer … or signer of the Application Form of the "proposal" … knew of such misrepresentation or the underlying material facts or circumstances which gave rise to the misrepresentation.

We shall not be entitled under any circumstances to void or rescind this policy with respect to any "insured".

Compl. Ex. 3, ECF No. 1-3 at 25-26 of 58 (emphasis added). The Policy also provides that Cincinnati has no duty to defend against any "claim" to which the insurance does not apply. *Id.* at 25 of 58.

### 3. Prior Knowledge Exclusion (Count III) and Dishonesty and Personal Profiting Exclusions (Count IV)

Part V, Section I, of the Policy lists the "Exclusions." *Id.* at 22 of 58. Of relevance to this case are Exclusions C and D (Count IV) and Exclusion E (Count III) of the Policy:

We are not liable to pay, indemnify or defend any "claim":

…

C. Based upon, arising out of, or in consequence of any of the "policy insureds" or any person for whose actions the "policy insureds" are legally responsible committing any deliberately fraudulent, dishonest, criminal or malicious act or omission or willful violation of any statute, law …, if a final and non-appealable judgment or adjudication adverse to the "policy insureds" establishes a deliberately fraudulent, dishonest, criminal or malicious act or omission or willful violation of any statute, law ….; or

D. Based upon, arising out of, or in consequence of any of the "policy insureds" or any person for whose actions the "policy insureds" are legally responsible:

    1. Gaining any profit or advantage to which they were not legally entitled; or

    2. For the return by any of the "policy insureds" of any remuneration paid to such "policy insureds" if the payment of such remuneration shall be held by the court to have been in violation of law;

if a final and non-appealable judgment or adjudication adverse to the "policy insureds" establishes the "policy insureds" gained profit or advantage they were not legally entitled and/or the "policy insureds" are required to return any remuneration held by the court to be in violation of law …; or

E. Based upon, arising out of, or in consequence of, or in any way involving any "wrongful act" committed, attempted or allegedly committed or attempted prior to the "policy period" of the applicable Coverage Part if:

    1. Prior to the earlier of the following dates:
     …
     any of the "named insured's" Executive Director, … Chief Executive Officer … knew or should have reasonably foreseen that such "wrongful act" might be the basis of a "claim"; ….

    * * *

*With respect to determining the applicability of the above Exclusions, no "wrongful act" or knowledge possessed by any one of the "policy insureds" shall be imputed to any other "policy insureds" to determine if coverage is available, except for facts*

> *pertaining to and knowledge possessed by any past, present or future … Chief Executive Officer of the "organization" … shall be imputed to the "organization" … to determine if coverage is available.*

*Id.* at 22-24 of 58 (emphasis added).

## III.  LEGAL ANALYSIS

### A.  Whether the Court should exercise its discretion to consider case

The Declaratory Judgment Act gave federal courts the authority to make a declaration of rights. 28 U.S.C. § 2201(a) (stating a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added). The Act, however, did not require the federal courts to do so. *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994). A trial judge should weigh the following factors when deciding whether to consider a declaratory judgment action: (1) whether the declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether the declaratory action will increase friction between federal and state courts and improperly infringe on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Id.* at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

### 1.  Whether the declaratory action will settle the controversy and serve a useful purpose (Factors 1 and 2)

Defendant argues that this action will not settle the controversy because Cincinnati has not joined all necessary parties to this action. Defendant asserts that all members of the putative class of all former Desert State clients are proper parties in this type of declaratory action. He contends that because the class action has not been certified, the issue of coverage would have to be relitigated, wasting resources and creating the risk of conflicting judgments.

"It is the duty of the court to first ascertain whether the questions in controversy between the parties to the federal suit can better be settled in the proceedings pending in the state court, i.e., whether there is such a plain, adequate and speedy remedy afforded in the pending state court action, that a declaratory judgment action will serve no useful purpose." *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 656 (10th Cir. 1946). When making this inquiry, a court should consider the scope of the pending state court proceeding and the defense, whether the claims of all interested parties can be satisfactorily adjudicated there, and whether necessary parties have been joined. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942).

"In declaratory actions brought to determine coverage under insurance policies issued to protect the insured against liability to third persons, third persons asserting such liability have been held to be proper parties to a declaratory judgment proceeding, although their claims against the insurer are contingent upon recovery of a judgment against the insured." *Franklin Life*, 157 F.2d at 658. *See also Employers Mut. Cas. Co. v. Witham Sales & Service, Inc.*, No. 2:08 cv 233, 2009 WL 4281457, at *5 (N.D. Ind. Nov. 23, 2009) ("[A] majority of courts have held that the injured party is a necessary party to a declaratory judgment action brought by the insurer against the insured when the insurer's motion seeks to determine policy coverage, not merely a duty to defend.") (and cited cases). "Ordinarily, in an action for a declaratory judgment, all persons interested in the declaration are necessary parties." *Franklin Life*, 157 F.2d at 658 (quotations omitted). The issue of the duty to defend, however, is different: the injured party suing the insured is not a necessary party to a declaratory judgment action. *See Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 174 F.R.D. 416, 417-19 (N.D. Ill. 1997) (holding, although Seventh Circuit had not addressed issue, that federal district courts in circuit had uniformly held that injured party is

not indispensable party to declaratory action that insured brings to determine insurer's duty to defend).

Cincinnati asserts that at the time it filed this case, Graham was the only third person asserting a liability claim because the other lawsuits had been dismissed without prejudice. Cincinnati argues that dismissal is not the appropriate remedy for failing to name parties added to the state court litigation after Cincinnati filed its declaratory action. Instead, Cincinnati asks the Court to grant it leave to amend the newly named plaintiffs/class representatives as defendants in this case. Cincinnati contends Graham cited no authority that a federal court should not or cannot consider a declaratory action until the class certification issue is decided.

The Court concludes that amendment to add the newly added class representatives is the appropriate remedy here. At the time this case was filed, Cincinnati had joined all injured parties. Adding the new class representatives addresses the concerns of the courts in requiring joinder of injured parties in declaratory actions concerning policy coverage, because the class representatives, if the class is certified, can fairly and adequately protect the injured parties' interests and give input to the Court before it potentially eliminates a source of funds to compensate the injured persons' interests. *Cf. Witham Sales*, 2009 WL 421457 at *6 (explaining these two rationales behind rule).

As for Defendant's argument that the class is not yet certified, the Court is not convinced that the failure to certify the class warrants dismissal of the action when other *Mhoon* factors weigh in favor of the Court exercising its jurisdiction. If the class is certified, then potentially only the class representatives need be named herein as the state court will have found that they could adequately represent the class. Alternatively, should the class not be certified, then the individual state plaintiffs could be added to this case. The Court is not prepared on the limited authority in

the record to determine whether all potential class members must be named in this suit. While this uncertainty in class certification status does not require dismissal of the case, it may warrant a stay of the coverage issues until the certification issue is decided by the state court. The Court will not decide the stay issue now, as it could benefit from targeted briefing on the issue with on-point authority. Moreover, Cincinnati requests as alternative relief leave to amend to add each of the class members. Given that the Court is not dismissing the case and is deferring ruling on whether all members are necessary parties, the Court will not decide the alternative relief requested by Plaintiff herein.

Turning to the necessity of Bennett to this case, Cincinnati argues that it has agreed to defend Bennett under a reservation of rights, so there is no current dispute requiring her addition as a party. Defendant asserts that Bennett is a necessary party because Desert State may be vicariously liable under the doctrine of respondeat superior for the claims against Bennett. Defendant also contends that there is a risk of inconsistent judgments. The Court is not convinced that Bennett is a necessary party under Rule 19 and that complete relief among the existing parties cannot be granted in her absence. Should Cincinnati deny coverage in the future to Bennett, then at that stage Bennett could be added. The remedy for non-joinder of a necessary party is joinder, not dismissal. At this stage, however, coverage and defense issues as to Bennett appear unripe for adjudication.

Defendant also asserts that Kerr is a necessary party to this action. Cincinnati initially responded that it was in the process of determining coverage as to Kerr, who was not an original defendant in the Graham Class Action Litigation. In a sur-reply, Cincinnati stated that it has since agreed to defend Kerr under a reservation of rights. Coverage issues as to Kerr also appear unripe

at this stage. Once again, joinder, rather than dismissal, would be the appropriate course should any coverage or duty to defend issues ripen.

For all the foregoing reasons, the Court finds that the first two *Mhoon* factors weigh in favor of considering this action. The declaratory action will settle issues between the parties and serve a useful purpose in clarifying defense and coverage issues between them. To the extent that there are or there will become necessary parties to this action, they can be joined to the action to help settle similar issues. The issue here will not be resolved in the pending state court litigation. *See Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012) ("Especially relevant may be whether the state court action would necessarily resolve the issues in the declaratory judgment action.").

### 2. Whether a declaratory remedy is being used for procedural fencing (Factor 3)

This case was initiated after the Graham Class Action Litigation began in state court. There is no pending state court case involving coverage or cost-of-defense issues. There has been no evidence presented suggesting that this case was filed to avoid an adverse ruling in state court or that there was a race to the courthouse steps. This factor weighs in favor of exercising the Court's discretion under § 2201(a). *Cf. St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169-70 (10th Cir. 2018) (finding procedural fencing factor weighed against court exercising declaratory judgment jurisdiction when insurer filed federal case one day before it knew insured was filing state court action against insurer for breach of contract and issue in both cases was identical – whether policy protects insured from co-workers' lawsuit).

### 3. Whether declaratory action would increase friction between state and federal courts and whether there is an alternative, better remedy (Factors 4 and 5)

As mentioned *supra*, the underlying state litigation does not involve the coverage and duty-to-defend issues as in this case. Graham nonetheless cites New Mexico law that generally "a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question." *Lopez v. New Mexico Public Schools Ins. Authority*, 1994-NMSC-017, ¶ 11, 870 P.2d 745. Defendant thus argues that factual determinations as to exclusion of coverage must be made by the state court.

In *Lopez*, parents brought a federal lawsuit against the school district arising out of an incident of sexual molestation of their child, and they asserted numerous torts including negligent hiring and violation of her rights to a free and appropriate public education. *Id.* ¶¶ 1-2. The school district had an insurance policy covering losses from personal injuries, but with an exclusion that sexual misconduct does not constitute a personal injury. *See id*. ¶ 4. The school district sought a declaratory judgment in state court that its insurer had a duty to defend and indemnify it. *Id.* ¶ 1. The New Mexico Supreme Court explained that a court, when determining whether an insurer has a duty to defend, compares the factual allegations in the complaint with the insurance policy. *Id.* ¶ 8. When the complaint is ambiguous and there is a factual question concerning the scope of the allegations the plaintiff is asserting against the defendant, the court in the primary case should determine the factual question. *See id.* ¶ 12. The *Lopez* court found the parents' allegations ambiguous as to whether they were intending to prove that the school failed to enforce the individual education plan or discriminated against them in a manner unrelated to the molestation, so it held it "was for the federal district court to determine whether the claims for discrimination and civil rights violations arose from the molestation upon proper discovery and motion by the Insurance Authority." *Id.*

This case, unlike *Lopez*, does not involve a factual question that the state court is likely to decide that will create tension between the courts. The factual issues related to the Policy provisions upon which Cincinnati relies in this case to establish no coverage and no duty to defend arise from the fraudulent actions of Donisthorpe. It is undisputed that Donisthorpe entered a guilty plea in his criminal case and made certain factual admissions therein. Here, the Court must construe the Policy language regarding the effect of his fraud on Cincinnati's contractual duties – issues that are not before the state court. Consequently, this Court's decision would not bind the state court or encroach on the state court's ability to develop the facts in the primary case. Graham has not demonstrated that a decision by this Court on any factual issue could create a collateral estoppel effect on a factual issue in the state case. The fourth factor weighs in favor of not dismissing this case under § 2201. *Cf. Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court *presenting the same issues*, not governed by federal law, *between the same parties*.") (emphasis added).

As for the final *Mhoon* factor, the New Mexico Declaratory Judgment Act, N.M. Stat. Ann. §§ 44-6-1 *et seq.* gives an insurer a state forum to determine and declare duties and rights. This case involves questions of state law, so the state court would be the better forum to adjudicate those questions. Nevertheless, there is currently no state case in which a declaratory judgment is sought. Cincinnati is not a party to the Graham Class Action Litigation. At present, there is no other forum in which the issues Cincinnati seeks resolution will be decided. Accordingly, this factor does not tilt the balance in favor of dismissal.

The *Mhoon* factors weigh in favor of this Court exercising its jurisdiction to consider this declaratory judgment action. The Court will not dismiss this case under its § 2201 discretion.

## B. Whether the Court should dismiss the case under Rule 12(b)(6)

Graham next argues that, even if the Court exercises its jurisdiction, the Court should dismiss the case on the following grounds.

### 1. Effect of failure to promptly return the premiums

Defendant asserts that Cincinnati failed to return or offer to return the premiums Desert State paid for coverage promptly upon discovery of Donisthorpe's misrepresentations. Defendant argues under New Mexico law that failure to return premiums promptly estops an insurer from rescinding the contract. Plaintiff responds that this rescission law is not applicable here because Cincinnati is not seeking to rescind the contract; rather, it is asserting that certain Policy exclusions bar coverage and defense.

As an initial matter, Defendant cites to the Cancellation Letter, Exhibit 4 attached to Cincinnati's complaint, to establish the fact that Cincinnati did not return any premiums or make a tender-back offer. The letter, however, is silent as to premiums and merely advises Desert State that Cincinnati is canceling the Policy effective April 17, 2018. Compl. Ex. 4, ECF No. 1-4. The fact upon which Defendant relies – the failure to pay premiums – is not set forth in the complaint or the exhibits attached to the complaint and is not a fact subject to judicial notice. To consider the fact, the Court would have to convert the motion to one for summary judgment, which it has declined to do. The Court will thus not dismiss the complaint on the grounds of failure to promptly return premiums.

Moreover, even if the Court were to consider this fact, the Court agrees with Cincinnati that the case law relied upon by Defendant is specific to the remedy of rescission of a contract. *See Putney v. Schmidt*, 1911-NMSC-043, ¶ 10, 120 P. 720 ("It is not disputed that where a party receives something of value under a contract, if he seeks to *rescind* the same upon the ground of

fraud, he must immediately, upon discovering the fraud, restore, or offer to restore, all that he has received under the contract, as a condition precedent *to his right to rescind* the same.") (emphasis added). Defendant failed to support his argument that the difference between rescission and cancellation is "semantic" with any authority. The case law found by the Court suggests the difference has meaning. *See First State Ins. Co. v. Callan Assoc., Inc.*, 113 F.3d 161, 163 (9th Cir. 1997) ("An action to rescind an insurance contract is distinct from an action merely to interpret an insurance contract."); *Prudential Ins. Co. of America v. Anaya*, 1967-NMSC-132, ¶ 33, 428 P.2d 640 ("A suit for rescission asks for the restoration of the status quo ante."). Cincinnati is seeking to avoid coverage and defense obligations based on the terms of the Policy, not through the equitable remedy of rescission.

### 2. Whether there is coverage for Desert State's vicarious liability for Bennett's and Donisthorpe's liability

Graham asserts that Cincinnati, despite Donisthorpe's misrepresentations, must indemnify losses for which Bennett is liable under both the Policy terms and the innocent co-insured doctrine. Graham contends that Desert State is vicariously liable as a corporate principle for Bennett's wrongs, so the Policy does not allow Cincinnati to avoid coverage for Desert State's vicarious liability for Bennett's wrongs. As mentioned previously, Cincinnati is currently providing a defense for Bennett. Cincinnati contends, however, that the Policy terms allow it to deny coverage for Desert State, because its CEO knew of and made the material misrepresentations, and that the Policy bars coverage for any alleged vicarious liability as well as direct liability.

The Policy contains limitations on Cincinnati's ability to impute Donisthorpe's fraud to other insureds who are innocent of the misrepresentations of a co-insured, but the Policy imputes the knowledge of a CEO to the organization. *See*, *e.g.*, Compl. Ex. 3 at 24 of 58 ("With respect to determining the applicability of the above Exclusions, no 'wrongful act' or knowledge possessed

by any one of the 'policy insureds' shall be imputed to any other 'policy insureds' to determine if coverage is available, *except* for facts pertaining to and knowledge possessed by any past, present or future … Chief Executive Officer of the 'organization' … shall be imputed to the 'organization' … to determine if coverage is available.") (italics added); *id.* at 25-26 of 58 (explaining that there will be no coverage for directors and officers who knew of misrepresentation in proposal and for organization, if CEO knew of misrepresentation, but that insurer "shall not be entitled under any circumstances to void or rescind this policy with respect to any 'insured.'"). Construing the complaint in the light most favorable to Plaintiff, Donisthorpe made material misrepresentations and was the CEO of Desert State at the time he signed the proposals.

In addition, Graham relies on the innocent co-insured doctrine. New Mexico has recognized this doctrine in the arson context in a case in which a husband intentionally set fire to the community home, and the innocent spouse sought coverage under a fire insurance policy issued to the community. *See Delph v. Potomac Inc. Co.*, 1980-NMSC-140, ¶¶ 3-6, 620 P.2d 1282. The insurer sought to vitiate the policy on the grounds of fraud. *Id.* ¶ 4. The New Mexico Supreme Court held that the husband's fraud could not be imputed to his wife and that his actions only void his interest in the insurance policy. *Id.* ¶ 14.

Defendant contends that New Mexico would extend the doctrine to this case, citing in support *Evanston Ins. Co., v. Agape Sr. Primary Care, Inc.*, 636 F. App'x 871 (4th Cir. Jan. 15, 2016). The Fourth Circuit, construing South Carolina law, extended the innocent co-insured doctrine to a case outside the arson context. *Id.* at 874-75. In that case, a company that employs doctors and nurse practitioners in nursing homes applied for an insurance policy for itself and its employees. *See id.* at 872-73. The individual doctors submitted separate renewal applications. *Id.* at 873. Unbeknownst to the company, one of its employed doctors was a fraud who was not

actually a doctor, yet practiced medicine for the company, and following numerous lawsuits, the insurer sought a declaratory judgment stating that it had no duty to defend the company or any of the employees because of the fraud. *See id.* at 872-74. The Fourth Circuit concluded that "South Carolina law and principles of equity demand that fraudulent misrepresentations on an application for medical malpractice insurance by a person posing as a doctor should not vitiate the insurance policy as to his or her innocent employer and fellow employees." *Id.* at 878. The Fourth Circuit explained, however, that insurers can include express policy language supporting their position to rescind for the intentional misrepresentation of any applicant, but that the insurer in this case had failed to include provisions limiting coverage in the face of fraud by one discrete applicant. *Id.* at 876.

Unlike the *Evanston* case, the Policy at issue here contains express, unambiguous language imputing the knowledge of an Executive Director, CEO, or CFO to the organization, Desert State. *See*, *e.g.*, Compl., Ex. 3 at 24 of 58. Even if New Mexico courts would extend the innocent co-insured doctrine to other areas of insurance, the Court is not convinced that under the circumstances here, New Mexico would disregard the express language of the insurance policy that imputes liability to the company when a high-ranking officer in the company has knowledge of a material misrepresentation or fraud that could result in a claim against the company. *Cf. In re HealthSouth Corp.*, 308 F.Supp.2d 1253, 1288-89 (N.D. Ala. 2004) (concluding that, even if adverse interest rule – that knowledge of employee acting adverse to company's interest should not be imputed to company – was law in Alabama, rule does not protect company when company contracted to be bound by statements and knowledge of any insured in its policy).

This Court need not decide now whether the innocent co-insured doctrine applies to Bennett, because Cincinnati is currently providing her a defense and has not denied coverage as to

her. Graham argues, however, that Desert State may be vicariously liable for Bennett's wrongs, as well as for Donisthorpe's wrongs, and Cincinnati has no right to avoid such coverage. Defendant relies on cases that have applied the principle that "intentional misconduct of an agent or other additional insured does not preclude coverage for a nonculpable insured that is vicariously liable for the wrong." *SL Indus., Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 213 (N.J. 1973) (quoting John E. Peer & Ronald E. Mallen, "Insurance Coverage of Employment Discrimination and Wrongful Termination Actions," 54 *Defense Counsel J.* 464, 476 (1987)).

The cases cited by Defendant, however, did not involve the situation here in which plain Policy language imputes the knowledge of a CEO to Desert State. *Cf., e.g., Dart Indus., Inc. v. Liberty Mut. Ins. Co.*, 484 F.2d 1295, 1296 (9th Cir. 1973) (noting that no question of policy coverage at issue; only issue was scope of California statute making insurer not liable where loss was caused by willful act of insured). Certainly, corporations have an interest in buying insurance to indemnify them against damages for willful acts of their agents or employees for which vicarious liability may be imposed. *See Dart*, 484 F.2d at 1297 (explaining policy argument). But as alleged in this case, Desert State agreed to Policy terms imputing facts and knowledge possessed by its CEO, among others, to the organization. Defendant's argument is not persuasive given the express language of the Policy exclusions and the lack of authority that courts will adhere to the doctrine in the face of contrary policy language. The Court therefore will not dismiss this declaratory judgment action.

## C. Whether the Court should stay the proceedings

Alternatively, Graham requests the Court to stay proceedings until the liability of Cincinnati's insureds have been fully determined in the Graham Class Action Litigation. The Court finds no need for that length of a stay for the reasons given *supra* regarding the *Mhoon* factors. As

the Court mentioned earlier in the opinion, however, a more limited stay until the class certification issue is decided may be appropriate, but the Court will not consider that issue until there is a specific request for that relief and further briefing on the issue.

**IT IS THEREFORE ORDERED** that Defendant Cameron Graham's Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment (**ECF No. 11**) is **DENIED**. The Court **GRANTS** Plaintiff leave to amend its Complaint to add the newly named plaintiffs/class representatives in the Graham Class Action Litigation as defendants. The amended complaint should be filed no later than 21 days from the date of this Memorandum Opinion and Order.

**SENIOR UNITED STATES DISTRICT JUDGE**